NEW YORK AND TEXAS LAND COMPANY, LTD.,
v. MARY J. VOTAW ET AL.

MARY J. VOTAW v. NEW YORK AND TEXAS LAND COMPANY, LTD.

Delivered June 16, 1897.

### 1. Judgment—Res Adjudicata—Error in Prior Suit.

A judgment for defendant in an action of trespass to try title is res adjudicata as to the title to the land sued for, notwithstanding that it does not expressly fix the boundary lines of the grant under which defendant claims.

### 2. Same.

The effect of a judgment for defendant in trespass to try title as res adjudicata as to the title of all the land sued for can not be avoided because the jury were erroneously charged to find for the defendant as to all of the land if they found that the surveys under which plaintiff claimed conflicted with a prior grant to defendant, whereas portions of some of the surveys concededly did not conflict with the grant.

APPEAL from Dimmitt. Tried below before Hon. M. F. LOWE.

*West & Cochran,* for New York and Texas Land Company, Ltd.—
1. From the pleadings and charge of the court, it is evident that the matter in issue in the cause in the United States court was the boundary line between appellant's surveys and the Lombrano grant. Hence the judgment in that cause, which fails to define that line, is an absolute nullity, and the plea of res adjudicata based thereon is no defense to this action. Stafford v. King, 30 Texas, 277; Reed v. Cavitt, 1 Texas Civ. App., 156; Jones v. Andrews, 72 Texas, 17; Richardson v. Powell, 83 Texas, 591; Converse v. Lanshaw, 81 Texas, 279; Spiva v. Williams, 20 Texas, 442; Eastham v. Sallis, 60 Texas, 580; Roche v. Lovell, 74 Texas, 134; Bennett v. Butterworth, 11 How. (U. S.), 669.

2. There being no issue of title involved in the case in the United States court, the judgment in that cause could not vest in the defendant, William Votaw, any title to any portion of the International & Great Northern Railroad surveys, and especially to any of said International & Great Northern Railroad lands lying outside of the limits of the Lombrano grant, as contended for by the defendant, William Votaw, in that cause. James v. James, 81 Texas, 380; Philipowski v. Spencer, 63 Texas, 607; Faires v. McClellan, 24 S. W. Rep., 365; Wallis v. Wofford, 26 S. W. Rep., 739; Pishaway v. Runnels, 71 Texas, 354; 21 Am. and Eng. Encyc. of Law, 128, 184; Horton v. Hamilton, 20 Texas, 606; Cromwell v. County of Sac., 94 U. S., 351; Lawrence v. Hunt, 10 Wend. (N. Y.), 81, 25 Am. Dec., 559; Black on Judg., sec. 614.

*Lane & Hicks,* for Mary J. Votaw.—1. It is evident from the pleadings and record in the cause tried in the United States court that the matter in issue was the title to all the land described in plaintiff's petition therein, and as the land sued for in this present suit is the same land the title of which was in issue in the federal court, and as that judgment

was definite and certain, and in favor of the defendant therein, it is res adjudicata to the issues presented in this suit. Rev. Stats., arts. 5258, 5275; Prather v. Railway, 75 Texas, 53; Freeman v. McAninch, 27 S. W. Rep., 97; Hoodless v. Winter, 80 Texas, 638; French v. Olive, 67 Texas, 400; Rackley v. Fowlkes, 36 S. W. Rep., 77; Mahurin v. McClung, 34 S. W. Rep., 1046.

2. In an action of trespass to try title, the issue is presented by the pleadings, and when the defendant pleads not guilty he asserts title to all the land described in the petition, and a general verdict for him is conclusive as to the title to all the land described in plaintiff's petition. Freeman v. McAninch, 87 Texas, 133; Railway v. Prather, 75 Texas, 55; Rev. Stats., arts. 5258, 5275; Konigheim v. Miles, 67 Texas, 120; Hoodless v. Winter, 80 Texas, 638.

NEILL, ASSOCIATE JUSTICE.—The suit which resulted in the judgment appealed from was originally instituted on the 23d day of January, 1895, by the New York and Texas Land Company, Limited, against Mrs. M. J. Votaw. In its petition the plaintiff alleges that it is the owner of certain surveys, twenty-seven in number, patented by the State of Texas to the International & Great Northern Railway Company, situated in Webb and Dimmitt Counties, and describes them sufficiently for identification. The object of the suit is, as shown by the petition, to settle and determine the boundary line between the surveys owned by the land company and the Juan Francisco Lombrano seven-league grant, claimed to be owned by and in the possession of Mrs. Mary J. Votaw. Subsequently Mary I. Richardson and her husband, Asher Richardson, Nancy M. Crider and Thomas Crider, her husband, Martha A. Votaw, Benjamin W. Votaw, Frank J. Votaw, Robert A. Votaw, Viola Votaw, Ella Votaw, and Susie Votaw, who are alleged to assert another and different boundary line between the surveys claimed by plaintiff and the Lombrano grant, were made parties defendant.

All the defendants, except Mrs. Mary J. Votaw, answered: (1) By disclaiming any interest in the lands described in plaintiff's petition which lay south and east of a certain line as described by metes and bounds in their answer; (2) by a plea of not guilty; (3) that, at the date of the institution of the suit, their codefendant, Mary J. Votaw, was the legal owner of all the lands described in plaintiff's petition, and that subsequently she conveyed all the lands described in plaintiff's petition to them, except the part to which they had disclaimed, and that they are now the legal owners of said lands, and their title thereto is superior to plaintiff's; (4) by a plea of res adjudicata, in which the judgment of the United States Circuit Court for the Western District of Texas, mentioned in our conclusions of fact, is pleaded in bar of plaintiff's action. To this plea are attached as exhibits copies of plaintiff's petition and of defendants' answer, of the charge of the court, and of the judgment taken from the records of the orginal cause in which the judgment pleaded was rendered.

The defendant Mrs. Mary J. Votaw answered: (1) By a plea of not guilty; (2) by a special plea in which she alleged that, when this suit was instituted, she was the legal owner of all the lands described in plaintiff's petition, but that on the 4th day of February, 1895, she executed a deed conveying to Asher Richardson and W. J. Slaughter, in trust for the benefit of the other defendants, that part of the lands in controversy described by metes and bounds. The description which follows is the boundaries of the Juan Francisco Lombrano seven-league grant, though said grant is not mentioned nor referred to. That she is the legal owner of the remaining lands described in plaintiff's petition, which are surveys Nos. 58, 49, 48, 47, 37, 38, 35, 4, 5, 6, and 8, in block 6, granted to the International & Great Northern Railroad Company, and surveys Nos. 26, 28, 29, 24, 5, 6, and 7, in block No. 7, granted to said railroad company, lying south and east of the following lines. Then follows a description, taken from the field notes of the Lombrano grant, of the south and west boundary lines of said grant, and to show the lines and the land claimed by her, Exhibit Z is attached to and made a part of her answer. (See Exhibit Z hereto attached.) The Lombrano grant, however, is not named in the answer. (3) By a plea of res adjudicata, in which the same judgment pleaded by her codefendants is pleaded in like manner by her; and (4) by the following plea in reconvention, viz: "Now this defendant would show that she is the owner in fee of the parts of said enumerated surveys lying south and east of said foregoing described lines, and she seeks affirmative relief, and charges that plaintiff's claim thereto to said lands is a cloud upon her title thereto; that by reason thereof she can neither mortgage nor sell the same, and she has been damaged thereby in the sum of $500; wherefore she pleads all the foregoing facts as recited in all their pleas in reconvention, and prays that on final hearing she have a judgment and decree against plaintiff to the lands put in issue by this plea, for an order canceling plaintiff's claim thereto as a cloud upon her title, for costs of suit, and general and special relief."

To the answers of defendants the plaintiff by a supplemental petition interposed a general demurrer, exceptions to the plea of res adjudicata, and a general exception to Mrs. Votaw's plea in reconvention.

On December 4, 1896, the court overruled all of plaintiff's exceptions presented in its supplemental petition, except the one to Mrs. Votaw's plea in reconvention and her plea of res adjudicata, which, in so far as it applied to the lands lying north and east of the lines described in her pleadings, was overruled, and so far as it applied to lands lying south and east of those lines the exception was sustained. Afterwards, on the 5th day of December, 1896, the case being tried on its merits, without a jury, the court rendered judgment in favor of the defendants, other than Mrs. Votaw, and fixed the true locality of the eastern and southern boundary line of the Lombrano grant, as claimed by the defendants, and gave judgment in favor of plaintiff against Mrs. M. J. Votaw for all lands described in her answer, lying south and east of the lines delineated in the

exhibit attached to her answer. From the judgment in favor of the defendants other than Mrs. Votaw, the plaintiff has appealed; and from the judgment in favor of plaintiff against Mrs. Votaw, she has appealed.

*Conclusions of Fact.*—1. The State of Texas granted by letters patent to the International & Great Northern Railroad Company the twenty-seven several surveys of land described in plaintiff's petition, and the plaintiff in this suit has a perfect chain of title to each of said surveys under said patents.

2. The State of Texas granted to Juan Francisco Lombrano seven leagues of land by letters patent, No. 893, Volume 9, dated July 12, 1855, and said grant is actually identified and found upon the ground as follows: Beginning at a stone mound on the east line of the Antonio Rivas grant of thirty leagues, N. 18½ E. 5414 varas from the S. E. corner of said Rivas grant, which said S. E. corner of said grant is identified, known, recognized, and admitted by all parties to this suit, and the beginning point or S. W. corner of said Lombrano grant is also fixed by following the line run by McDonald in 1850 from the mouth of the Tasa Creek, on the Rio Grande River, N. 86 E. to the E. line of the Rivas grant. The marks and blazes on said line of McDonald are still plain to be seen in said line. Thence N. 84 E. 6960 varas to the San Ambrosia Creek, above and near the mouth of the San Pablo Creek, formerly called the San Pedro Creek. Thence on same course N. 84 E. at 11,130 varas, a point on line from which Piedra Mendoza or Cathedral Rock bears S. 6 E. 212 varas; continuing same course crosses said creek at 12,699 varas, at 14,839 varas a stone mound on the side of sand hill near the old Royal Road, and near the head of said creek, which stone mound was standing in the year 1858 and was composed of five large rocks different from any in the vicinity, and which are now lying scattered on the ground near said corner. Thence N. 18 W., with variation of needle 8-20' E., 26,578 varas to a stake on the line running from a stone mound on the east bank of the Arroya Cuerva, near the crossing of an old road, to a stone mound on a Loma Chaperosa, at the head of Carrizo Creek, which stone mounds are very old and are still standing. Thence S. 80-20' W. along said line 779 varas to a stake on the east boundary line of the Antonio Rivas grant and on the bank of a creek. Thence S. 9½ W. (variation 10.45' E.) with said Rivas line 16,327 to the San Ambrosia Pass, a stone mound, a stake, a stone mound from which a hackberry stump 20 in. in dia. brs. N. 35 W. 35 varas, and a mesquite now 12 in. dia., part of old marks showing, brs. S. 44° 45' W. 38 varas, being the original bearings of a common corner of the Rivas and Lombrano grant, which common corner is identified, known, recognized, and admitted by all parties to this suit. Thence S. 18½ W. (variation 8.20' E.) 11,110 varas to the place of beginning, containing about seven and one-half leagues of land.

3. The twenty-seven several surveys, as described by the plaintiff in its petition, each and all conflict, in whole or in part, with the land em-

braced in the Lombrano grant as above described, and the surveys of plaintiff that conflict in part with said grant are as follows: Surveys Nos. 7, 6, 23, and 29, respectively, conflict in part on the south boundary line of the said grant, and surveys Nos. 29, 28, 26, 8, 9, 7, 6, 5, 4, 37, 35, 38, 48, 47, 49, 58, and 59, as described in Exhibit Z of M. J. Votaw's answer herein, each and all conflict in part with the Lombrano east boundary line. The defendants hold title to the Lombrano grant, and it is older in point of time than that to the surveys of plaintiff described in its petition.

4. On the 30th day of September, 1884, the New York and Texas Land Company, Limited, filed suit in the United States Circuit Court of the Western District of Texas against William Votaw, in the ordinary form of an action of trespass to try title, to recover the identical twenty-seven surveys described in plaintiff's original petition in the case now before us. The defendant in that case, William Votaw, after being duly cited, appeared and answered by pleading (1) a general demurrer, (2) not guilty, and (3) improvements in good faith. The latter plea contains the following averments: "The said defendant, William Votaw, avers that he and those under whom he claims have had adverse possession in good faith of the premises in controversy, to wit, seven leagues of land which was granted by the State of Texas to the heirs of Juan Francisco Lombrano, situated in Dimmitt and Maverick Counties, Texas [then follows the field notes of the grant] which said tract of land is more particularly defined by the inclosure of this defendant." On the 20th day of November, 1886, the case in said Circuit Court was tried before a jury, who, after hearing the evidence, received the following instructions from the court: "The defendant's title to the Lombrano grant is older than the title under which the plaintiff claims, and in case you shall determine that the subsequent locations and patents under which plaintiff claims conflict with the lands embraced in the Lombrano grant, you will find for the defendant, and the main question for your determination is as to whether the Lombrano grant lines, as actually run by the surveyor, are on the ground. You are to determine from the evidence whether the San Pedro Creek called for in the field notes of the grant is the creek now called San Pedro, or whether the creek called at this time the San Pablo, at the time this survey was made, was by the surveyor called the San Pedro Creek. And you will look to all the calls along the creek, and to all the evidence adduced. You will determine this, as well as all other questions of fact, by a preponderance of evidence, whenever the evidence is found to be conflicting. I may here say that, if the lower creek, now called the San Pablo, is the south line of the Lombrano grant, then your verdict will be for the defendant. If you find from the evidence that the San Pedro Creek, as now called, is the south boundary of the Lombrano, as run by the surveyor, then plaintiff will be entitled to your verdict." This is the only part of the charge affecting the issue of res adjudicata raised in the present case. Those parts of it which relate to the plea of improvements

in good faith, and which announce general principles of law affecting questions of boundary, as they have no relation to the issues involved here, are omitted from these conclusions. The verdict returned by the jury, after receiving this charge, is as follows: "We the jury find for the defendant;" upon which judgment was entered "that the plaintiff, the New York and Texas Land Company, Limited, take nothing by this action, and that the defendant, William Votaw, go hence and recover of and from the said New York and Texas Land Company, Limited, all costs in this behalf incurred, for which execution may issue." Upon a writ of error sued out by the New York and Texas Land Company, Limited, to the Supreme Court of the United States, this judgment was, on the 23d day of October, 1893, affirmed, and said judgment is now valid and subsisting.

5. William Votaw died in December, 1889, and by his last will and testament bequeathed all his property to Mary J. Votaw, who is his widow, which will has been duly probated, and his executors, William J. Slaughter and Mary J. Votaw, named therein, have duly qualified thereunder. On the 4th day of February, 1895, Mary J. Votaw executed a deed to William J. Slaughter and Asher Richardson, conveying all of the Lombrano seven-league grant to them, as trustees for the benefit of her children, who are defendants in this suit.

#### CONCLUSIONS OF LAW PERTAINING TO THE APPEAL OF THE NEW YORK AND TEXAS LAND COMPANY, LIMITED.

On this appeal it is contended by the appellant that the judgment set out in our third conclusion of fact, of the United States Circuit Court, is a nullity, because it fails to dispose of the matter involved in that suit, which appellant claims was the boundary line between appellant's surveys and the Lombrano grant, and such boundary line is not fixed or defined by the judgment. We think that the facts found by this court in its fourth conclusion are sufficient to show that there is nothing in the contention, and to demonstrate that the plea of res adjudicata, as to all of the lands in controversy which lay within the bounds of the Lombrano grant, was well pleaded, and fully sustained by the evidence. It is true that the judgment does not fix the lines of the grant, but the record of the case wherein it was rendered conclusively shows that the verdict established that the boundaries of that grant include at least all the lands claimed by plaintiff to which these appellees assert title, and as the judgment is conclusive against plaintiff's right to recover the land sued for, it was not necessary that any boundaries should be designated. When the pleadings are looked to, no doubt as to the issue determined by the judgment can be entertained.

#### CONCLUSIONS OF LAW UPON THE APPEAL OF MRS. MARY J. VOTAW.

The assignment of Mrs. Votaw is, that "the court erred in sustaining plaintiff's exception to this defendant's plea of res adjudicata in part,

and restricting this defendant's said plea to the boundaries of the Lombrano grant."

The action of the court in sustaining this exception was tantamount to holding that the judgment pleaded for the purpose of showing a former adjudication of the controversy was unavailing, for, as the answer of Mrs. Votaw shows she had parted with her interest in all the land, except the parts of the surveys lying south and east of the lines indicated in her answer, it was worth nothing to her to be allowed to show that the title to the other lands in controversy had been settled by prior adjudication. Was her plea good as to the lands claimed by plaintiff which lay south and east of the lines designated? is the question.

There could be no doubt that this question should be answered in the affirmative had not the judge virtually assumed in his charge that the surveys of the plaintiff were in conflict with the Lombrano grant, if its boundary lines should be determined, as they were claimed by the defendant. As the bounds were determined, the lands claimed were in conflict with that grant; but as to some of the surveys, only a part of them were in conflict. The portions of them not in conflict, which Mrs. Votaw now claims, would have been recovered by the plaintiff in that suit, had the court properly instructed the jury; and it was owing to the error in the charge which directed the jury to find for the defendant, in the event they should find the surveys of plaintiff in conflict with the Lombrano grant, that plaintiff failed to recover those portions of the surveys which were not in conflict with that grant. This error should have been corrected in that suit, and can not be corrected or taken advantage of by the plaintiff in this. Though the verdict which defeated plaintiff's right to recover any part of the surveys sued for was doubtless induced by a charge which did not properly submit the issue between the parties, the judgment rendered upon it is as final and conclusive as if the issue had been properly submitted. By the pleadings of the parties the right of the plaintiff to recover these lands was placed in issue, and if its title to any part of them was superior to the defendants', the company could, under its pleadings, have recovered such part; and as it recovered no part, it must be held concluded by the judgment which Mrs. Votaw has pleaded in bar of its action against her.

Where it appears, as in the case before us, from the record of a court having jurisdiction over the parties and the subject matter, that an issue has been presented and determined, such decision, so long as it is not set aside, is conclusive upon the rights of the parties when the same issue is again presented. As is said by the Supreme Court in Freeman v. McAnich, 87 Texas, 135: "That the court in which the former action was tried had jurisdiction over the parties and subject matter involved in that controversy can not be questioned. * * * An issue is the question in dispute between the parties to an action, and, in the courts of this State, that is required to be presented by proper pleadings." The petition and answer in this case, as in the one we are quoting from, show that "the leading issue presented was one of title; and the fact that the determina-

tion of it may have depended on a question of boundary could not change the character of the vital issue in the case, for that was but a question of fact to be considered, like any other fact, in determining whether the issue of title to the land should be decided in favor of one party or the other. What the issues made by the pleadings were is not left uncertain by the record." There being no uncertainty as to it, it could be none other than what the pleadings show; and though this issue of title may not have been properly submitted by the charge of the court to the jury, it was nevertheless submitted to them, and determined by their verdict, and a judgment entered upon it which settles the issue between the parties and all persons in privity with them.

We conclude, therefore, that the court erred in sustaining the plaintiff's exception to Mrs. Votaw's plea of res adjudicata, and that she should have been allowed, under said plea, to have proved the allegations therein contained.

We think also the court erred in sustaining the plaintiff's exceptions to her plea in reconvention, for if the matters alleged therein are true, she is entitled to the affirmative relief therein prayed for.

We are asked by counsel for this appellant to render judgment in her favor. This we do not feel authorized to do, because exceptions to her pleadings were sustained, and no evidence consequently was introduced by either party upon the issues raised by them. We can only say that the pleas are good, and that if established by competent evidence she would be entitled to judgment on them.

That part of the judgment of the District Court from which the New York and Texas Land Company has appealed is affirmed, and that part from which Mrs. M. J. Votaw has appealed is reversed, and the cause as to all those issues made by the pleadings which are solely between her and the company is remanded to the District Court for trial in accordance with this opinion.

*Affirmed in part; reversed and remanded in part.*

ON MOTION FOR REHEARING.

Delivered October 20, 1897.

NEILL, Associate Justice.—We deem it only necessary to say that we did not hold in our opinion, as is asserted by appellant in the fifth paragraph of this motion, "that Mrs. M. J. Votaw in her plea in reconvention was entitled to recover the segment of 6947 acres of land lying south and east of red lines in the sketch attached to the opinion." Nor did we express any opinion as to what, if any, would be the effect of the prior judgment upon the issues arising from her plea in reconvention, in which she assumes the burden of establishing her right to recover possession from the appellant. No issue requiring an expression of opinion upon this point was before us, and upon it we were not authorized to say anything, and refrained from doing so. We simply held that the trial court erred in sustaining plaintiff's demurrer to defendant's plea in re-

convention, giving our reason for the holding that, if the matters alleged in the plea are true, she is entitled to the affirmative relief prayed for. This plea makes no reference to former adjudication, and our conclusion that it stated a cause of action was wholly without regard to such adjudication, but was based alone upon a consideration of the allegations in the plea.

The motion is overruled.

*Rehearing denied.*

Writ of error dismissed.

JAMES, C. J., disqualified and not sitting.