# IN THE MATTER OF THE ESTATE OF CLARENCE CHEONG CHINN, DECEASED.

## No. 4120.

FEBRUARY 10, 1961.

TSUKIYAMA, C. J., CASSIDY, WIRTZ, AND LEWIS, J.J.,
AND CIRCUIT JUDGE HAWKINS ASSIGNED BY
REASON OF VACANCY.

OPINION OF THE COURT BY LEWIS, J.

This is an interlocutory appeal from an order denying a motion to dismiss an appeal to the circuit court by

contestants, whose objections to the admission to probate of the September 17, 1956 will of deceased were disallowed, and the probate contest ordered dismissed, by a circuit judge sitting at chambers, the Honorable W. Z. Fairbanks.

The contestants, appellees here, are Yau Lee Chinn, an adult son of decedent, and Amy Farias, next friend of Yau Hook Chinn and Geraldine Louise Chinn, minor children of decedent. The decision against them was rendered and judgment entered November 6, 1958. On November 14, 1958 they filed a paper designated "Notice of Appeal and Motion for Jury Trial," captioned "In the Circuit Court of the First Judicial Circuit." All previous papers in the proceeding had carried in the caption the additional words "At Chambers" "In Probate."

Fanny Loo Chinn, widow of decedent, was the petitioner for probate of the will, in which she is one of the devisees, the others being the three children who, however, are not her children but the children of Amy Farias, divorced wife of decedent and next friend of the minor contestants. The widow hereinafter is referred to as the proponent and the contestants are referred to as such.

When the circuit judge dismissed the contest he appointed Cooke Trust Company, Limited, as administrator with the will annexed, instead of appointing proponent, who was designated by the will of September 17, 1956 as executrix. Proponent and the administrator with the will annexed moved on January 6, 1959 for dismissal of contestants' appeal. This motion was based on the alleged failure to pay "the costs accrued," and two other grounds (failure to file bond and state the issues of fact relied upon on appeal) which have not been urged here. No point was made as to the caption used by contestants.

This motion, unlike contestants' paper, carried in the

caption the words "At Chambers" "In Probate." It was noticed for hearing before and was heard by the Honorable Frank A. McKinley. By order of February 17, 1959, Judge McKinley denied the motion to dismiss contestants' appeal and at the same time allowed an interlocutory appeal to this court, which has been taken by proponent. The administrator with the will annexed appeared before us but filed no brief and presented no argument, advising this court that it considered itself a stakeholder. We express no opinion on the status of an administrator with the will annexed during the pendency of an appeal from an order disallowing objections to the probate of the will.

We first consider two questions raised by this court, *sua sponte,* having to do with the use and nonuse by the parties of the words "At Chambers" and "In Probate" in the caption of the various papers filed below.

Due to the nonapplicability of the Hawaii Rules of Civil Procedure to certain proceedings (H.R.C.P., Rule 81(a)) there still obtains in this State, in probate proceedings, the statutory distinction between the jurisdiction of the circuit court and a circuit judge at chambers. R.L.H. 1955, § 215-18, provides that the conducting of probate proceedings is a part of the "power at chambers" of the "judges of the several circuit courts" but "subject to appeal to the circuit and supreme courts, according to law." The expression "probate court" is used herein to signify the circuit judge sitting at chambers in probate.

This court has deemed it unnecessary to decide "[w]hether the circuit court and the court of the circuit judge at chambers should be regarded as one, that is, whether they should be considered merely as the law and equity sides of the same court, or whether they should be considered as distinct courts, though presided over by

the same judges." *Carter* v. *Gear,* 16 Haw. 242, 251, *aff'd* 197 U.S. 348. Upon another phase of *Carter* the court ruled that the question whether the petition was before the circuit court or before the judge at chambers should be decided upon "the record as a whole." *Carter* v. *Gear,* 16 Haw. 412. The criteria are illustrated by *Kala* v. *Mills,* 15 Haw. 422, and *Kendall* v. *Holloway,* 16 Haw. 45, in which it was held that resort to a circuit judge at chambers was intended, while in *In re Candido,* 31 Haw. 630, there was nothing to show that the jurisdiction of the circuit judge at chambers was invoked or exercised. In each case the record as a whole was considered.

Both parties have cited *Estate of Walker,* 43 Haw. 304, 306, in which the court sustained the denial of a jury trial in a probate matter, saying:

"* * * The probate court and the circuit court are not one and the same. A motion for a jury trial must be made not in the probate court but in the circuit court after an appeal has been taken there. (*Estate of Brenig,* 7 Haw. 640)."

The record in *Walker* shows that an order for distribution of the estate was made by the Honorable Harry R. Hewitt, and within ten days thereafter the claimant filed a motion captioned "At Chambers" "In Probate" wherein he moved "this Honorable Court" that a certain issue of fact "on appeal be tried by a jury in accordance with Section 12002 of Revised Laws of Hawaii 1945 [R.L.H. 1955, § 317-2]." Together with the motion the claimant filed a notice that the motion would be presented before the same judge, the Honorable Harry R. Hewitt, who thereafter heard and denied the motion. Had the claimant intended to address the circuit court, the appellate tribunal, this motion would have been presented to another judge; pursuant to R.L.H. 1955, § 208-3, Judge Hewitt

would have been prohibited from sitting upon an appeal from his own decision. Upon the record as a whole the motion in *Walker* was made in the probate court, the trial court. Though one may take a precautionary appeal in some circumstances, the claimant in *Walker* did not so proceed but, on the contrary, was endeavoring to pursue his appeal in the trial court. The essence of an appeal is the divesting of the trial court's jurisdiction. See *Madden v. Madden,* 43 Haw. 148, 150.

In the present case Judge Fairbanks was the assigned probate judge when the contest first was heard and accordingly retained the matter when the 1958 term commenced January 13, 1958, under the Order of Assignment, rendering the decision of the probate court upon the will contest. However, Judge McKinley was assigned to the probate calendar and civil proceedings sounding in probate during that term, and the 1959 term did not begin until January 12, 1959. The motion to dismiss the appeal was noticed for hearing before him on January 9, 1959.

When Judge McKinley denied the motion to dismiss the appeal and allowed the interlocutory appeal the order he signed, like the motion to dismiss the appeal, was captioned "At Chambers" "In Probate." The order allowed the interlocutory appeal "pursuant to the provisions of Section 208-3, R.L.H. 1955," which relates to appeals from circuit judges at chambers. Correctly, R.L.H. 1955, § 210-1, should have been cited if it was the circuit court that was making the ruling. That is, viewed as a circuit court ruling, the order would be reviewable by an interlocutory appeal under H.R.C.P., Rule 73, in lieu of the interlocutory bill of exceptions formerly allowable under R.L.H. 1955, § 210-1. Compare the procedure followed in *Estate of Lazarus,* 11 Haw. 379.

Contestants had invoked the appellate jurisdiction of

the circuit court. They filed a notice of appeal, which is the method prescribed for taking the appeal pursuant to R.L.H. 1955, § 208-3, applicable here as held in *Estate of Lazarus, supra.* They sought to move for a jury trial at the same time by the same paper; the heading read "Notice of Appeal and Motion for Jury Trial." In the body of the paper contestants first stated that they "do jointly and severally hereby give notice of their appeal and do hereby appeal to the Circuit Court of the First Judicial Circuit from the Decision and Judgment at chambers of the Honorable W. Z. Fairbanks, filed November 6, 1958 * * *." In a further paragraph contestants "move the Appellate Circuit Court that the issues of fact raised by the Caveat and Objections to Probate filed by them herein and decided upon by the Honorable W. Z. Fairbanks, be tried by a jury." As previously noted, the paper was captioned in the circuit court without addition of the words "At Chambers" "In Probate," which previously appeared in the caption.

Thus contestants studiously avoided invoking the probate court's jurisdiction. Their error lay in their failure to file two separate papers. Under the proper procedure, as set out in *Estate of Brenig,* 7 Haw. 640 and in *Walker,* the appeal is taken first. The notice of appeal should be captioned in the court appealed from. Contestants could have stated in their notice of appeal that their appeal was to the circuit court for trial before a jury of the issues of fact raised by them at chambers, and could have captioned this notice of appeal in the probate court without falling afoul of *Walker.* The separate motion for jury trial of the facts in issue would be captioned in the circuit court, which has jurisdiction after the appeal is taken. R.L.H. 1955, § 317-2.

Filing of the notice of appeal is a jurisdictional re-

quirement. *Laupahoehoe Sugar Co.* v. *Lalakea,* 27 Haw. 682, 687 (1924). Proponent takes the position that the circuit court never acquired jurisdiction of the case. However, it was for the circuit court to rule on its jurisdiction. The motion to dismiss the appeal should have been presented there. *Kahai* v. *Kuhia,* 11 Haw. 3 (1897); *Peterson* v. *Peterson,* 208 Ore. 131, 292 P. 2d 130, 133; *Succession of Illg,* 179 La. 291, 154 So. 2. We have concluded that, considering the record as a whole, the order denying the motion to dismiss contestants' appeal and allowing the interlocutory appeal to this court was made in the probate court and not in the circuit court, i.e., the appellate court, which should have ruled on the motion to dismiss the appeal.

In a similar situation arising in the land court, this court passed upon the validity of an appeal to a circuit court sitting with a jury though the motion to dismiss was made in the land court and it was the land court which certified to this court the question whether the appeal should be dismissed, which question was answered in the affirmative. *Application of Lum Yip Kee, Land Situate at Puulena,* 32 Haw. 355 (1932). Under our view of the correct procedure the answer to the reserved question should have been that it did not properly arise in the land court, and we cannot overlook the fact that the *Lum Yip Kee* case was conducive to the erroneous view that the motion to dismiss in this case should be made in the probate court. Under the circumstances we will not require proponent to again make the motion to dismiss with the proper caption before considering the matter further, particularly since it is our view that contestants' appeal was valid and the will contest still must be tried before a jury with consequent further delay. We therefore proceed to state our reasons for concluding that neither the

caption used on the notice of appeal nor the matter of costs presents any fatal defect in the appeal.

The caption of the notice of appeal made no difference in the assigning of a number under the rules of the circuit court of the first circuit (Rule 1, 1945 ed., presently Rule 2). The paper filed by contestants carried the number "P. No. 19702," the same as all other papers in the proceeding, and was filed on November 14, 1958 by the Clerk of the First Circuit Court, who is clerk both for the circuit judge sitting at chambers and the circuit court as such, using the same file mark for both. Thus the error in the caption was not such as to cause the notice of appeal to be filed in an inaccessible place. See *Federal Deposit Ins. Corp.* v. *Congregation Poiley Tzedeck,* 159 F. 2d 163, 166. Indeed, the notice of appeal was filed exactly where it would have been filed had the caption been correct. The intention to divest the probate court's jurisdiction in order to move for a jury trial in the circuit court was clearly stated in contestants' paper, differentiating the case from *Walker.* The judgment appealed from was identified both as to the court rendering it, and the date thereof. Proponent was not misled, as appears from the fact that her motion to dismiss the appeal raised no issue as to the caption. See *Peterson* v. *Peterson, supra.* That the error in the caption of the paper was not fatal to the validity of the appeal appears from *Perry* v. *Baskey,* 158 Ohio St. 151, 107 N.E. 2d 328; *Christensen* v. *Christensen,* 52 Utah 253, 173 Pac. 383; *Application of Academy Housing Corp.,* 7 App. Div. 2d 725, 180 N.Y.S. 2d 395.

Proponent contends that, under *Estate of Lazarus, supra,* it was requisite to the acquisition of jurisdiction by the circuit court on the appeal to a jury that contestants "pay the costs accrued," as provided by R.L.H. 1955, § 208-3. Contestants rely on R.L.H. 1955, § 208-11, which

provides that no appeal shall be dismissed by reason of the payment of "an insufficient amount of costs" unless the party required to pay the costs neglects to comply with an order "directing that the correct amount of such costs be paid within a specified time * * *." There was no such order. Proponent, however, contends that contestants paid none of the costs accrued and that section 208-11 does not have to do with that situation.

The sum which proponent contends should have been paid upon the taking of the appeal is $24. She showed by the testimony of the Supervising Cashier, First Circuit Court, the record of payment of court costs as government realizations according to the statutory schedule of fees. The items consisted of $15 paid by proponent upon the original filing of the petition for probate, $2 paid by Amy Farias upon the filing of a petition for family allowance for the minor children, $2 paid by proponent upon the filing of a petition for appointment of a temporary administrator, and $5 paid by the administrator with the will annexed upon the filing of a petition relating to repairs of decedent's property, a total of $24.

Proponent did not show that any costs were charged against the proceeding that were not paid. The court inquired whether there were any, and proponent's counsel stated that it was his contention that contestants should have paid "the costs that have been already paid which have been turned into government realization."

The requirement of payment of costs, in order to appeal, under some statutes is intended for the protection of the court officers while under others it is intended for the protection of the adverse party. 4A C.J.S., *Appeal and Error*, § 496, at 196. That our statute is of the former type was held in a line of cases which established that "costs," as used in the term "the costs accrued" in what

is now R.L.H. 1955, § 208-3, means only costs of court which are government realizations. *Lufkin* v. *Grand Hotel*, 24 Haw. 744, 747 (1919); *Christian* v. *Waialua Agricultural Co.*, 31 Haw. 242, 245 (1930); *Estate of Lee Chuck*, 33 Haw. 220, 222 (1934).

When these cases were decided the statute prescribed a schedule of fees to be realized by the government but did not require prepayment thereof. A deposit was required by court rule, but this deposit "was not a prepayment of costs but in the nature of security for costs." *Heritage* v. *Heritage*, 30 Haw. 91, 92 (1927). The appellant, upon an appeal from chambers, was required to pay the theretofore unpaid court costs even though secured by the adverse party's deposit, and even though the appellant might not have been required to pay the costs but for his appeal. *Heritage* v. *Heritage, supra.*

The requirement of payment of "the costs accrued" upon an appeal from chambers is an old one, the origin of which is set out in *Estate of Lazarus, supra.* No change has been made in this provision, and it was reenacted by S.L.H. 1939, c. 18, S.L.H. 1941, c. 122, and S.L.H. 1945, c. 194. However, the application of this provision has been affected by other legislation.

Act 19, S.L.H. 1939, amended R.L.H. 1935, § 3791, and provided in pertinent part as in the present R.L.H. 1955, § 219-5, that "[u]pon the institution of any * * * proceeding * * * there shall be paid to the clerk of the circuit court by the person so instituting such * * * proceeding, as costs of court" certain sums, likewise "[u]pon the filing of any paper * * * there shall be paid to the clerk of the circuit court by the person filing the same" prescribed sums. That the sums paid to the clerk from time to time under the statutory schedule as amended by Act 19, S.L.H. 1939, are paid as government realizations,

and are not deposited as security as theretofore under court rule, does not admit of doubt. Indeed, by the same Act 19, S.L.H. 1939, the legislature evidenced its understanding of the change in the system of collecting court costs that was made by that act, i.e., that a prepayment system was being instituted. This appears from the amendment made by that act of what is now R.L.H. 1955, § 219-3, so as to provide for waiver of "prepayment of costs" in certain cases.

The prepayment system thus instituted did not apply to any pending suit (S.L.H. 1939, c. 19, § 6). Hence, so far as cases pending on June 1, 1939 were concerned, there were accrued costs that had not been collected and further costs would accrue. This in itself explains why the legislature continued the requirement that appellant pay the costs accrued in the amendatory acts. Other instances where the requirement applies are noted below.

We think the requirement of payment of "the costs accrued" has only limited application in the present state of the law, so far as appeals from chambers under R.L.H. 1955, § 208-3, are concerned. *Cf.* R.L.H. 1955, § 342-34, which governs appeals to a circuit court sitting with a jury under the Land Court Registration Act and was not affected by S.L.H. 1939, c. 19.

So far as appeals to this court from chambers are concerned, they now are governed by H.R.C.P., Rule 73(a). Appeals to a circuit court from chambers continue to be governed by R.L.H. 1955, § 208-3, but usually there will be no accrued costs to be collected at the time of the appeal. They will have been collected already. There of course will be instances where the requirement applies, e.g., where the clerk inadvertently failed to collect the court costs when he should have, or prepayment of costs was waived under R.L.H. 1955, § 219-3, but costs were not altogether remitted.

Since the system of collecting the government realizations was changed by S.L.H. 1939, c. 19, *supra,* no case before this court has presented the question whether the appellant must pay "the costs accrued" if under the new system they already have been paid. Since 1939, only two cases have touched upon the point. In neither was there any contention that required payments had not been made. *Estate of Amasiu,* 36 Haw. 394 (1943) involved an appeal from a decree which sustained a plea in bar and denied a petition filed in 1942 to revoke the probate of a will admitted to probate in 1938 after trial of a contest presented by the petitioner. Appellee's brief called attention to the fact that the appeal was not taken in time. The court stated that the burden rested on appellant to show compliance with the statute, that the notice of appeal was filed three days late, and that the record "does not show payment of costs at any time." As appears upon examination of the record it did not show anything whatsoever concerning the collection of probate court costs. The appeal actually was dismissed on the ground it was not filed in time. In the other case, *Jones* v. *Dieker,* 39 Haw. 208 (1952), the question was whether the cross-appeal of Jones should be dismissed because his notice of appeal was not in the record. After referring to *Laupahoehoe Sugar Co.* v. *Lalakea,* 27 Haw. 682, 687 (1924), the court permitted Jones to enlarge the record to include the missing document. The requirement of payment of costs, though mentioned in the opinion, played no part in the case. Examination of the record discloses that in *Jones,* as here, collection of costs of the circuit court at chambers was shown by endorsement on the flyleaf of the pleading at the time of filing. The record in *Jones* did not show any other collection of such costs.

Proponent contends that the court costs should be collected a second time from the appellant, regardless

of who incurred them, citing *Callison* v. *Atlantic Coast Line R.R.*, 82 Fla. 516, 90 So. 619. That case arose under the Florida statute which, as held in *Haile* v. *Mason Hotel & Investment Co.*, 71 Fla. 469, 473, is for the benefit of the adverse party. Florida cases therefore are inapposite.

As pointed out in *Johns* v. *Lewis Drug Co.*, 120 Ga. 640, 48 S.E. 127, a case arising under a statute which like ours was for the protection of the court officers and not the adverse party:

"\* \* \* There is no intimation in the statute that there is to be an intermediate shifting of accounts as to costs, or that the losing party is to refund to his adversary costs which the latter may have advanced in some previous stages of the litigation; nor is there any suggestion that the applicant for the certiorari is to again pay the justice costs already collected, and that the officer is then to account with the opposite party. All of such matters are to be settled between the plaintiff and the defendant when the final judgment determines who is cast in the suit."

So here there is no suggestion in the statute that, in the event of an appeal, there should be a double collection by the government of the prescribed fees, nor is there any suggestion that the prevailing party should be enabled to collect part of his cost bill, i.e., the fees paid the government, at the time of taking of the appeal. The statute remains what it always has been—a means of collecting for the government court costs which have not been collected. It has not been shown that there are any. We have no occasion to consider R.L.H. 1955, § 208-11.

Order affirmed.

*W. Y. Char* for appellant.

*Wong, Lau & Lo* (*Richard C. Lo*) for Cooke Trust Co., Administrator with the Will Annexed.

*Richard D. Welsh* for appellees.

I have carefully considered the statutory requirements contained in R.L.H. 1955, § 208-3, pertinent to appeals from circuit judges at chambers and have reached a conclusion which does not coincide with that of the majority of the court.

It is to be noted that the question before this court relates to the procedure in appealing from an order of a circuit judge at chambers to a circuit court for the purpose of having certain issues of fact determined by a jury. The record shows that on November 6, 1958, the presiding circuit judge at chambers, in a probate proceeding wherein the validity of a will was contested, made and entered a judgment in favor of the proponent (appellant here) of the will and against certain contestants (appellees here). On November 14, 1958, the contestants filed an appeal for a jury trial in the circuit court, but did not pay the accrued costs. A motion was filed by the proponent to dismiss the appeal on the ground of failure to pay said accrued costs, but the court denied the motion. Appealing from the order of denial, the proponent is now before this court.

That the appellate procedure prescribed in R.L.H. 1955, § 208-3, applies to appeals from circuit judges at chambers to the circuit court is well established. *Estate of Lazarus,* 11 Haw. 379. Such procedure, as distinguished from the method of appealing to this court, has not been superseded by the Hawaii Rules of Civil Procedure. *Estate of Walker,* 43 Haw. 304. The statute in question provides, *inter alia:* "Appeals shall be allowed * * *, whenever the party appealing shall file notice of his appeal, and pay the costs accrued within ten days after the filing of the decision, judgment, order or decree appealed from; provided, however, that in any case in which the law allows an appeal from the decision, judgment, order or decree

of a judge in chambers to be tried before a jury, the judge whose decision, judgment, order or decree is appealed from shall not preside at the trial of such appeal before a jury."

The proponent adduced evidence showing that the costs accrued at the time of contestants' appeal to the circuit court amounted to $24. The latter contend that the requirement for the payment of accrued costs as enunciated by this court, in such cases as *Estate of Lazarus, supra, Laupahoehoe Sugar Co.* v. *Lalakea,* 27 Haw. 682, and *Estate of Lee Chuck,* 33 Haw. 220, is inapplicable to the case at bar, on the ground that since the enactment by the legislature of what is now R.L.H. 1955, § 208-11, in 1939, it has in effect become unnecessary for them to pay the accrued costs, unless the proponent first applied to the circuit judge for an order assessing the costs and specifying the time within which to pay the same. § 208-11, upon which contestants rely, reads as follows: "No bill of exceptions or writ of error and no appeals of any kind whatsoever to any court shall be dismissed by reason of the payment of an insufficient amount of costs, unless upon neglect of the party required to pay such costs to comply with an order of a court or judge having jurisdiction directing that the correct amount of such costs be paid within a specified time, not less than twenty-four hours."

There is no ambiguity in the foregoing language. It is obvious that the purpose of the legislation was not to penalize an appellant for an "insufficient" payment but to enable him to pay the "correct" amount when ascertained. Failure to pay any part of the accrued costs is a total default and not an insufficiency within the contemplation of the above-quoted statute.

Without reaching this point, however, the majority of this court rests its conclusion in this case on the theory

that, since 1939 when the legislature, by Act 19, S.L.H. 1939, amended Section 3791, R.L.H. 1935, relating to the schedule of court costs, that portion of what is now § 208-3, R.L.H. 1955, which provides for the payment of accrued costs, has become nonfunctional. It is true that under the old statute and court rules, costs were initially deposited by the party instituting a court proceeding. The amendment of 1939 was primarily designed to provide for the payment of costs in a specified lump sum for the purpose of simplification. Even under the old schedule of costs, the party instituting an action was required to deposit a lump sum with the court clerk, as indicated in *Heritage* v. *Heritage,* 30 Haw. 91, which is further discussed below. As the case progressed, the clerk's costs were charged against the deposit as government realization. The prevailing party recouped his expenses when costs were taxed. In that respect, I do not think that there is any practical distinction between the old statute and the new, for it appears to me that the essential purpose of the latter was to revise the schedule of costs. Under either the old or the new schedule, there would be no jeopardy to the collectibility of government realization. For that reason, I am unable to share the view that under the 1939 amendment, it would be, costs-wise, an idle duplication to enforce that portion of § 208-3 which provides for the payment of accrued costs.

It is most significant and persuasive to me that, although the section of the statute which is now § 208-3 was amended by the legislature on two subsequent occasions, *i.e.,* in 1941 and 1945, the provision requiring the payment of "accrued costs" has never been removed. It still stands. If the view be correct that the 1939 amendment by implication made that requirement no longer effective, it would be sound logic to assume that the legislature would not

have retained the particular provision in amending the section on two separate occasions. It is especially noteworthy that in the same 1939 session when the costs schedule was revised, the legislature also amended § 208-3 by deleting only the requirement for a "bond in the sum of fifty dollars," leaving intact the provision for the payment of "costs accrued," although such provision immediately preceded the deleted phrase relating to the bond. Such legislative development clearly indicates deliberateness on the part of the legislature in retaining the costs requirement.

I cannot subscribe to the theory that the legislature continued the requirement in question, although it twice amended the statute subsequent to 1939, in order to insure the collection of accrued costs in old cases then still pending. Indeed, if that were true, the legislature would have declared its intent by inserting an appropriate qualification or limitation in the amendatory acts.

The rule is well recognized that courts are generally not in favor of the repeal of a statute by implication, unless a later statute is inextricably in conflict therewith or uses such language as to admit of no other reasonable construction. *Costa Minors* v. *Flintkote Co.*, 42 Haw. 518. It is generally presumed to be the intention of the legislature that all its enactments which are not repealed should be given effect. 50 Am. Jur. *Statutes*, § 362, p. 366. Where the language of a statute is not clear and definite in that it is susceptible of more than one meaning, the court may look to the history of the statute to ascertain the intent of the legislature. *Cf., Employees' Retirement System* v. *Chang*, 42 Haw. 532. An examination of the journals of the 1939 legislature is revealing. The Senate Committee on Judiciary (1939 Senate Journal, pp. 278-279) reported on the bill (Senate Bill No. 57) to amend the then existing

statute relating to costs and fees, as follows: "Our courts have been operating under a cost schedule that has been changed but slightly since 1903. * * * The purpose of this bill is to simplify, clarify and modernize these cost schedules. * * * We are advised that the bill will not materially increase or decrease the present revenue from costs."

Substantially similar was the report of the House Committee on Judiciary, but note this significant statement contained therein: "The Bill simplifies the present law and cuts down the costs in several cases and dispenses with the present system of appeal bonds, subtituting therefor lump sums to be deposited to cover costs." (1939 House Journal, pp. 474-475.) The House language "to be deposited to cover costs" confirms the theory that whether costs are "deposited" or "paid," the funds being in the custody of the clerk, the terminological difference does not affect government realization, and that the 1939 legislature did not intend to stultify or abate the efficacy of the provision requiring the payment of accrued costs under a separate and independent statute, to wit, § 208-3.

The term "costs accrued" as used in § 208-3 has always been construed, not as "taxed costs," but as clerk's costs or costs of court as shown on the docket. *Christian* v. *Waialua Agricultural Company*, 31 Haw. 242. The contestants advance the argument that "no application was made by the appellant [proponent] for the payment of costs in the sum of $24" and that the circuit judge "never ruled on this question." Suffice it to say that taxation of costs has never been a *conditio sine qua non* to the payment of the statutory accrued costs. *Estate of Lee Chuck, supra; Christian, supra.*

*Heritage* v. *Heritage, supra,* is one of the cases in the vanguard in which this court declared its interpretation of the requirement for the payment of accrued costs in no

uncertain terms. There the appellant failed to comply with the requirement but sought to excuse the non-payment by urging that the appellee, who instituted the suit, had initially deposited costs in the sum of $9, which was the exact amount of the accrued costs, and that the decree of the trial judge required him, the appellee, to ultimately pay all costs. In dismissing the appeal, this court held: "The fact that the provision of the decree in the instant case relative to the payment of costs would in all probability be affirmed and the appellee be required ultimately to pay such costs is certainly not a legal substitute for nor the legal equivalent of the payment of accrued costs required of the appellant by the statute." See also *Estate of Lee Chuck, supra; Lufkin* v. *Grand Hotel Co.,* 24 Haw. 744.

It is to be noted that § 208-3 specifically requires "* * * the party appealing shall file notice of his appeal, and pay the costs accrued * * *." As in the *Heritage* case, *supra,* in the case at bar the party (proponent here) who instituted the original proceeding had paid the lump sum costs, and it was the adversary (contestants here) who appealed from an adverse decree. The latter cannot be heard to say that costs were already paid by the other party. The rationale that it "is certainly not a legal substitute for nor the legal equivalent of the payment of accrued costs required of the appellant by the statute" is as apposite in this case as it was in *Heritage.*

This court has consistently pronounced the rule, before and after 1939, that the requirements set forth in § 208-3 are mandatory and jurisdictional. The case of *Estate of Amasiu,* 36 Haw. 394, was decided in 1943. Said this court: "Furthermore, the statutory requirements that 'the party appealing shall file notice of his appeal, and pay costs accrued * * *' are jurisdictional as well as being mandatory

\* \* \*." See *Bremner* v. *Thomas*, 25 F. 2d 301. See also *Jones* v. *Dieker*, 39 Haw. 208 (1952), in which this court quoted with approval from *Laupahoehoe Sugar Co.* v. *Lalakea, supra,* that compliance with all the statutory requirements was " '\* \* \* the effective appellate act giving this court the power to review the particular decree complained of.' " In referring to the statute in question, neither in *Amasiu* nor in *Jones* did the court make the slightest allusion to any limitation in the application of the law in cases filed after 1939.

In the light of such judicial pronouncements of the court, and of the fact that the legislature has unqualifiedly retained the "accrued costs" requirement to this day, despite other amendments to § 208-3, and of the fact that the procedure applicable to appeals from a circuit judge at chambers to the circuit court has not been superseded by the Hawaii Rules of Civil Procedure (*Estate of Walker, supra*), I am of the opinion that the contestants' appeal to the circuit court in the case at bar gave the appellate court no jurisdiction and was therefore nugatory.